UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 09-3621-mcaliley

UNITED STATES OF AMERICA

v.

JOAQUIN REIGOSA,
ANGEL E. ALVAREZ,
CESAR E. GONZALEZ, and
DAYANA MORENO,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes   __X__ No


                Respectfully submitted,

                JEFFREY H. SLOMAN
                ACTING UNITED STATES ATTORNEY

BY: _____
                ARMANDO ROSQUETE
                ASSISTANT UNITED STATES ATTORNEY
                Florida Bar No. 0648434
                99 N. E. 4th Street, 7th Floor
                Miami, Florida  33132-2111
                Tel:  (305) 961-9377
                Fax: (305) 536-7213
                Email: Armando.Rosquete@usdoj.gov

AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Joaquin Reigosa, et al. | ) Case No. 09-3621 McAliley |
| | ) |
| | ) |
| _Defendant_ | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __11/20/2009__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant violated __21__ U. S. C. § __846, 841(a)__, an offense described as follows:

Conspiracy to possess with intent to distribute cocaine (Title 21, United States Code, Section 846); and
Possession with intent to distribute cocaine (Title 21, United States Code, Section 841(a)(1)).

This criminal complaint is based on these facts:
   SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_Complainant's signature_

JEREMY NAWYN, DEA Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __11/21/2009__

_Judge's signature_

City and state:     __MIAMI, FLORIDA__     __CHRIS M. McALILEY, MAGISTRATE JUDGE__
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **JEREMY NAWYN**, being first duly sworn, depose and state as follows:

1.  I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the Homestead Resident Office. As such, I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with the DEA for over nine (9) months, during which time I have received specialized training in the area of narcotics trafficking and money laundering. As a Special Agent, I have participated in numerous investigations involving the possession, manufacture, and distribution of controlled substances.

2.  The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers and agents. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against defendants Joaquin REIGOSA, Angel E. ALVAREZ, Cesar E. GONZALEZ, Dayana MORENO. Accordingly, this affidavit does not contain all of the facts known to me concerning this investigation.

3.  On November 12, 2009, agents of the DEA received information from a DEA confidential source ("CS"), regarding the cocaine trafficking activities of Joaquin REIGOSA and his lieutenant, Cesar GONZALEZ. Specifically, the CS provided information that a large shipment of cocaine would be arriving within the Miami area within the following week. The CS stated that the cocaine came from Mexico and was transported using tractor trailers. The CS stated that it was common practice for REIGOSA to provide GONZALEZ with multiple

kilograms of cocaine, which GONZALEZ would place within cardboard boxes into the back of his white Cadillac Escalade and deliver to multiple addresses. The CS had previously received cocaine from REIGOSA and GONZALEZ in this fashion on numerous occasions. On the evening of November 20, 2009, the CS received and made several recorded telephone calls to and from REIGOSA indicating that the shipment had arrived that day and the CS would receive at least five (5) kilograms of cocaine. During one call, the CS asks REIGOSA whether he should be expecting "El Negro" to deliver the cocaine and REIGOSA said that he would try to get the cocaine to the CS that evening. In another call, REIGOSA tells the CS that he should be expecting "El Negro" shortly. "El Negro" is the nickname for Cesar E. GONZALEZ.

4. On November 20, 2009, at approximately 7:00 p.m., agents established visual surveillance at GONZALEZ's residence, 1181 NW 127th Ct., Miami, Florida. At approximately 7:11 p.m., agents observed a white Cadillac Escalade back into the driveway at GONZALEZ's residence. The driver of the white Cadillac Escalade was identified by agents as Cesar E. GONZALEZ.

5. At approximately 7:21 p.m., the CS received a recorded telephone call from REIGOSA indicating that the cocaine shipment would be delivered to the CS's residence between 8:30 p.m. and 9:00 p.m. that night.

6. At approximately 8:17 p.m., agents observed GONZALEZ depart from his residence and enter the white Cadillac Escalade. At that point, mobile surveillance was established on GONZALEZ.

7. At approximately 8:35 p.m., agents observed the Cadillac Escalade back into the driveway at 10057 NW 127 St., Hialeah Gardens, Florida. This is the registered address of Angel E. ALVAREZ.

8. At approximately 8:48 p.m., agents observed the Cadillac Escalade depart from the residence located at 10057 NW 127 St., Hialeah Gardens, Florida. At that point, mobile surveillance was established on the Cadillac Escalade.

9. At approximately 8:55 p.m., agents observed the Escalade parked at the residence at 9844 NW 122nd Terrace, Hialeah Gardens, Florida.

10. At approximately 9:05 p.m., agents observed the Cadillac Escalade depart from the residence located at 9844 NW 122nd Terrace, Hialeah Gardens, Florida. Shortly thereafter, Hialeah Gardens Police Department conducted a traffic stop of the white Cadillac Escalade. Agents observed that GONZALEZ, driver of the Cadillac Escalade, was acting nervous when the officers approached him. Agents asked GONZALEZ to exit the vehicle. Based on the information obtained from the CS, the agents' observations during surveillance, and the previously recorded calls from and to REIGOSA regarding the cocaine, agents conducted a search of the Cadillac Escalade. At that time, agents discovered several white boxes which had been taped shut in the rear compartment of GONZALEZ's vehicle. Within the white boxes, agents discovered approximately fifteen (15) kilograms of cocaine wrapped tightly in black tape. At that point, GONZALEZ was placed into custody.

11. GONZALEZ was read his *Miranda* warnings, as well as provided a written copy of his *Miranda* warnings, which GONZALEZ signed as verification of his waiver of those rights. GONZALEZ admitted to receiving and delivering cocaine that evening. GONZALEZ provided the general locations of the residences, including the intersection of ALVAREZ's residence. GONZALEZ also stated that GONZALEZ had delivered cocaine that evening to "Papi" in an Eggo waffle box, and GONZALEZ confirmed that his nickname is "El Negro." Shortly thereafter, GONZALEZ also provided agents with written consent to search his residence.

12. At approximately 11:00 p.m., agents knocked on the door of the residence located at 10057 NW 127th St., Hialeah Gardens, Florida. MORENO answered the door and agents asked her if they could come in and she gestured for them to enter. Agents could see ALVAREZ in the ~~apartment~~ [SN] residence. After allowing the agents to enter, and a few feet from the entranceway, agents viewed over five vacuum sealed kilogram-sized baggies, consistent with the cocaine packaging discovered in GONZALEZ's Escalade. The kilogram-sized baggies were in plain view and strewn on the kitchen counter. The kilogram-sized baggies were wet. Based on your Affiant's training and experience the wet baggies are consistent with efforts to dispose of the cocaine prior to the agents' arrival. At approximately 11:15 p.m., agents gained written consent from ALVAREZ to search the residence. Shortly thereafter, agents discovered an Eggo waffle box, on which was written "Papa" on the top flap, which contained a white powder which field tested positive for cocaine hydrochloride. Residue on the kilogram-sized baggies also field tested positive for cocaine hydrochloride. Both ALVAREZ and MORENO were taken into custody.

13. At approximately 11:30 p.m., agents searched GONZALEZ's residence. Agents discovered approximately seven (7) kilograms of cocaine wrapped in black tape. Agents also discovered five (5) rubber banded bundles of United States Currency and two (2) money counting machines.

14. Based on the Affiant's training, experience, and the facts set out in this Affidavit, there is probable cause to believe that Joaquin REIGOSA, Angel E. ALVAREZ, Cesar E. GONZALEZ, and Dayana MORENO did commit violations of Title 21, United States Code, Section 846 (Conspiracy to Possess With Intent to Distribute Five (5) Kilograms or more of

Cocaine) and Title 21 United States Code, Section 841(a)(1) (Possession with Intent to Distribute Five (5) Kilograms or more of Cocaine).

YOUR AFFIANT SAYETH FURTHER NAUGHT.

_____
JEREMY NAWYN, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before
me this 21st day of November 2009.

_____
CHRIS M. McALILEY
UNITED STATES MAGISTRATE JUDGE